E-FILED
Monday, 30 March, 2009 12:08:22 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

EVAN GRIFFITH,            )
                          )
      Petitioner,         )
                          )
v.                        )   Case No. 06-1306
                          )
DONALD GAETZ, Warden,     )
                          )
      Respondent.         )

## O R D E R

Now before the Court is Petitioner, Evan Griffith's ("Griffith"), Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Petition [#29] is DISMISSED as untimely.

### FACTUAL BACKGROUND

Following a jury trial in the Circuit Court of Livingston County, Illinois, Griffith was found guilty of first degree murder and unlawful possession of a weapon by a person in the custody of the Illinois Department of Corrections ("IDOC"). He was sentenced to death on the murder conviction and a consecutive term of 30 years' imprisonment on the weapons conviction. His death sentence was subsequently commuted to life in prison without parole by former Governor George Ryan.

As Griffith was sentenced to death, his appeal went directly to the Illinois Supreme Court. On appeal, he raised 12 claims of error: (1) the trial court violated his Sixth Amendment right to counsel by forcing him to proceed pro se in deciding whether to give a second-degree murder instruction to the jury; (2) he did not knowingly waive his right to

have a second-degree murder instruction presented to the jury; (3) trial counsel was ineffective in connection with the jury instruction issue; (4) he was denied a fair trial when the prosecution insinuated that he had a gang-related motive for the murder; (5) he was denied a fair trial when the prosecution suggested that he had threatened two prosecution witnesses; (6) he was denied a fair trial when the prosecution elicited testimony from witnesses that they had been intimidated but the record did not indicate that it was Griffith that had threatened them; (7) he was denied a fair trial when the prosecution elicited victim impact testimony during the guilt phase and then referred to that testimony in its closing argument; (8) he was denied his right to individualized consideration in sentencing when the trial judge refused to consider evidence of his good character; (9) his death sentence violated the Eighth Amendment because of the trial judge's beliefs; (10) his death sentence violated the Eighth Amendment because the trial court relied on information outside the record that he was not allowed to explain or rebut; (11) Illinois' death penalty statute violates the Eighth Amendment because it does not allow for meaningful consideration of mitigation evidence; and (12) Illinois' death penalty statute violates the Eighth Amendment because it does not sufficiently minimize the risk of arbitrary or capricious death sentences. The Illinois Supreme Court affirmed Griffith's convictions and sentences on April 21, 1994. On October 17, 1994, Griffith's Petition for Writ of Certiorari to the United States Supreme Court was denied.

On March 31, 1995, Griffith filed a post-conviction petition in the Livingston County Circuit Court in which he raised essentially five claims of error: (1) trial counsel was ineffective for failing to file a motion to preclude the use of his prior murder conviction to impeach his trial testimony; (2) trial counsel was ineffective for failing to introduce evidence

that the victim had ordered acts of violence to be committed against other inmates; (3) he was denied his right to a fair trial because his trial testimony was impeached by the use of a prior murder conviction that had been obtained in violation of his right to effective assistance of counsel; (4) his death sentence was invalid because it relied on his prior murder conviction; and (5) his trial counsel was ineffective for failing to investigate and present relevant mitigation evidence. His petition was amended on January 6, 2000, to add the following claims: (6) he is actually innocent of first-degree murder because three prosecution witnesses had since recanted their testimony; (7) he was denied his right to a fair trial because the State coerced the three inmate witnesses to testify falsely at trial; and (8) trial counsel was ineffective for failing to interview one of the state's inmate witnesses and a correctional officer. The petition was amended for the second time on May 21, 2001, and three additional claims were added: (9) trial counsel was ineffective for failing to introduce evidence that the victim was in prison for murder; (10) the State failed to disclose the victim's rap sheet showing his history of violence; and (11) trial counsel was ineffective for failing to object to the form of the not-guilty verdict forms, and appellate counsel was ineffective for failing to raise the issue on appeal. Griffith's claims regarding the witness recantations were denied after an evidentiary hearing, and the remainder of his claims were also denied.

On appeal to the Illinois Appellate Court, Fourth District, Griffith presented 11 arguments: (1) the witness recantations left no evidence of his guilt; (2) the witness recantations revealed that their false testimony was procured by coercion and undisclosed promises; (3) the evidence produced in the post-conviction proceedings demonstrated that he was actually innocent; (4) the circuit court applied an improper presumption that

discounted the recantation testimony and abused its discretion; (5) his due process rights were violated when the state failed to disclose the criminal histories of the victim and the inmate eyewitnesses; (6) the circuit court erred in dismissing his claim that trial counsel was ineffective for failing to fully investigate and present his self-defense claim; (7) the circuit court erred in dismissing his claim that trial counsel was ineffective for failing to interview a correctional officer; (8) the circuit court erred in denying his request to examine the victim's IDOC master file; (9) his convictions are void because they were obtained through the efforts of an attorney who was neither an assistant state's attorney nor an assistant attorney general; (10) the circuit court erred in dismissing his claim that counsel was ineffective for failing to object to the form of the not-guilty verdict forms; and (11) the cumulative violations of his constitutional rights require a new trial. The denial of post-conviction relief was affirmed by the Illinois Appellate Court on July 13, 2005.

On September 1, 2005, Griffith filed a petition for leave to file a PLA to the Illinois Supreme Court instanter, which was granted on September 13, 2005. In his PLA, Griffith made three arguments: (1) he was denied his due process right to a full and fair evidentiary hearing where the circuit court exceeded the presumption of unreliability applicable to recantation testimony and denied him the ability to present testimony or obtain records to corroborate the recantation testimony; (2) the appellate court misapplied Brady v. Maryland, in concluding that the inmate files and criminal histories of the victim and inmate witnesses were not exculpatory evidence; and (3) trial counsel was ineffective for failing to investigate and present evidence in support of his claim of self-defense and failing to object to the improper not-guilty forms, and appellate counsel was ineffective for failing to raise

trial counsel's ineffectiveness regarding the verdict forms. The Illinois Supreme Court denied Griffith's PLA.

Griffith initially filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 raising 11 claims of error. The Court subsequently granted his request for new counsel to appear and file an amended petition. The Amended Petition presents eight claims of error: (1) he was denied his right to due process in connection with the jury instructions for second-degree murder; (2) the Illinois Supreme Court's decision that his waiver of his right to the second-degree murder instruction was knowing and intelligent was based on an unreasonable determination of the facts; (3) the Illinois Supreme Court unreasonably applied clearly established precedent in determining that the circuit court did not deprive him of the effective assistance of counsel when he was forced to proceed pro se regarding the consideration of a second-degree murder instruction; (4) the Illinois Supreme Court's rejection of his claim that counsel was ineffective at the jury instruction conference was contrary to, and an unreasonable application of, clearly established precedent; (5) his due process rights were denied by the State's knowing use of false testimony; (6) the suppression of material, non-cumulative impeachment and exculpatory evidence deprived him of a fair trial; (7) his trial counsel was ineffective for failing to fully investigate the victim's background and provide evidence of his violent character, investigate the criminal histories of the State's inmate witnesses, interview the State's motive witness, and object to the not-guilty verdict forms, and his appellate counsel was ineffective for failing to raise the verdict form issue on appeal; and (8) the Illinois Appellate Court's rejection of his cumulative error claim was contrary to, and an unreasonable application of, clearly

established federal law. The matter is now fully briefed, and the State has moved to dismiss the Petition as untimely. This Order follows.

## LEGAL STANDARD

I.    Timeliness of Petition

There are statutory time limits which govern whether a district court can entertain a petition for writ of habeas corpus. The present case is covered by 28 U.S.C. § 2244, which states in relevant part:

> A 1 year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The time during which a properly filed application for post-conviction or other collateral review is pending in the state courts is not counted toward any period of limitation. 28 U.S.C. § 2244(d)(2).

In the present case, Austin alleges that he is entitled to relief because of errors purportedly made by his attorneys, the prosecutor, and the trial court. He makes no

assertion that there is any newly recognized constitutional right, that he was prevented from filing, or that he was unable to discover the factual predicate for his claims through the exercise of due diligence. Thus, this case does not involve the application of sub-sections (B), (C), or (D) above.

Here, Griffith's direct appeal became final on October 17, 1994, when the United States Supreme Court denied his petition for a writ of certiorari. As his direct appeal concluded prior to the enactment of the AEDPA, the Seventh Circuit has held that his one-year clock began to run on April 24, 1996. *See* Newell v. Hanks, 283 F.3d 827, 832-33 (7th Cir. 2002). Griffith already had a post-conviction petition pending in the circuit court at this time, which tolled the limitations period until July 13, 2005, when the denial of the petition was affirmed by the Illinois Appellate Court.

Because he had filed an affidavit of intent to file a PLA with the Illinois Supreme Court, Griffith then had 35 days, or until August 17, 2005, in which to file his PLA. On September 1, 2005, Griffith filed a motion for leave to file a PLA instanter, which was granted on September 13, 2005. The PLA was then denied on December 1, 2005, and his first filing with this Court did not occur until November 30, 2006.

The State argues that beginning on August 18, 2005 (the day after his PLA was due), Griffith's period of limitations began to run and continued to run until September 1, 2005, when his motion for leave to file his PLA instanter was filed, because he had no properly filed pleading to toll it. In support of this argument, the State cites Fernandez v. Sternes, 227 F.3d 977, 979-981 (7th Cir. 2000):

> [N]o one would suppose, if a state allows a second collateral attack, that this excludes all time since the prisoner began his first collateral attack, even though nothing at all was 'pending'

> during the intervening months. Just so, again, with motions to file untimely appeals and applications for discretionary review. . . . It is sensible to say that a petition continues to be 'pending' during the period between one court's decision and a timely request for further review by a higher court (provided that such a request is filed); it is not sensible to say that the petition continues to be 'pending' after the time for further review has expired without action to continue the litigation. That a request may be resuscitated does not mean that it was 'pending' in the interim.

The State contends that the period began to run again after the Illinois Supreme Court denied his PLA on December 1, 2005. Accordingly, Griffith's federal habeas corpus petition should have been filed on or before November 17, 2006.

Griffith responds that under Carey v. Saffold, 536 U.S. 214, 219-20 (2002), his application for post-conviction relief remains pending until it has achieved final resolution through the State's post-conviction procedures. He further cites Evans v. Chavis, 546 U.S. 189, 219-20 (2006), for the proposition that the normal definition of "pending" is "in continuance" or "not yet decided" and that "means that an application is pending as long as the ordinary state collateral review process is 'in continuance' – i.e., 'until the completion of' that process." In other words, Griffith argues that under Evans, courts are prohibited from excluding time between levels of state appellate review, suggesting that Saffold and Evans have effectively overruled Fernandez.

In Saffold, the Supreme Court held that a petition for collateral review in the state courts remains "pending" during the time between a lower state court's decision and the filing of a notice of appeal to a higher state court. 536 U.S. at 220-21. However, the holding in Saffold presumes that the filing of the notice of appeal was timely under state law; the Supreme Court declined to address the question of whether this rule applied when the

notice of appeal to the higher state court was untimely. Chavis, 546 U.S. at 191-92. In Chavis, the Supreme Court revisited its holding in Saffold, emphasizing the need to determine the timeliness of the filing of the attempt to appeal the lower court's ruling and went on to discuss how the State of California, which does not set a definitive time limit for appealing to a higher court, should ascertain whether an appeal was timely filed. Id., at 197-201. Thus, contrary to Griffith's assertions, neither case expressly or implicitly overrules the Seventh Circuit's holding in Fernandez.

It is also apparent that the Seventh Circuit has not interpreted either Saffold or Chavis as overruling its holding in Fernandez. In Johnson v. Chandler, 224 Fed.Appx. 515, 517-18 (7th Cir. 2007), the Court of Appeals relied on Fernandez in finding that the one-year period of limitations was not tolled during the time between the ruling of the appellate court and the time that an untimely PLA was filed. The Seventh Circuit noted:

> The only period that can be excluded from the year under § 2244(d)(2) is the period that the petition is "pending" under § 2244(d)(2), beginning from the time the prisoner asks the state court to excuse his default to the time the court issues its decision on the merits. Johnson did not file his petition with the Illinois Supreme Court until more than a month after the 21-day deadline under Illinois Supreme Court Rule 315(b) had passes, so it was not "pending" before the court until he filed the late petition.

Id., at 517 (internal citations omitted). *See also*, Streu v. Dormire, ___ F.3d ___, 2009 WL 465963 (8th Cir. Feb. 26, 2009) (joining other courts of appeal in concluding that "an application is not 'pending' between the expiration of the time for appeal and the filing of a petition for belated appeal), *citing* McMillan v. Secretary for Department of Corrections, 257 Fed.Appx. 249, 252 (11th Cir. 2007); Allen v. Mitchell, 276 F.3d 183, 186 (4th Cir. 2001);

Melancon v. Kaylo, 259 F.3d 401, 407 (5th Cir. 2001); Gibson v. Klinger, 232 F.3d 799, 807 (10th Cir. 2000); Fernandez, 227 F.3d at 979.[1]

Griffith also cites Kliner v. McCann, 2008 WL 4922590, at *3-5 (N.D.Ill. Nov. 13, 2008), for the proposition that the granting of a petition for leave to file instanter is essentially an extension of the time period for filing a PLA. However, his reliance on this case is again misplaced, as Judge Darrah expressly distinguished the situation in Fernandez, where a petitioner missed a deadline completely and sought permission to file an untimely petition, from the situation in Kliner, where the petitioner had filed a timely PLA but was subsequently granted leave to correct minor formatting errors in the petition. Id., at *3. Griffith's situation is much more closely analogous to the situation in Fernandez. He did not file anything prior to the expiration of the time for filing a PLA, and in his Motion for Leave to File Petition for Leave to Appeal Instanter, he expressly acknowledged that his

---

[11] The Supreme Court's recent opinion in Jimenez v. Quarterman, ___ U.S. ___, 129 S.Ct. 681 (2009), may also be instructive. Although discussed in the context of a request to reopen direct review in a state court criminal proceeding and when the conclusion of direct review becomes "final", the Supreme Court noted that an order granting leave to file an untimely appeal "restore[d] the pendency of the direct appeal." Id., at 686. Griffith argues that in holding that the granting of a motion to reopen the direct appeal postpones the date upon which the judgment becomes final, the Supreme Court effectively held that the granting of a motion to make an untimely filing effectively tolled the statute of limitations in every circumstance. However, is making this argument, Griffith uses "finality" and "pendency" interchangeably and ignores the difference in the role played by the conclusion of direct review and post-conviction proceedings in a habeas corpus case. The Court finds that a better reading of Jimenez is that while the granting of leave to pursue a late appeal on direct review postpones the finality or conclusion of direct review for purposes of the limitations period, that is not synonymous with a finding that the direct appeal was pending for that entire time. In fact, the portion of the opinion referenced previously in this paragraph could be read to recognize that the appeal was not "pending" during the time that elapsed from the expiration of the time for filing the notice of appeal until the motion for leave to file was granted.

filing was untimely. Thus, his request for leave to file was because he completely missed the filing deadline; it was not merely a request to correct formatting or other ministerial errors. Accordingly, his argument based on Kliner, which in any event is not binding on this Court, must be rejected.

Griffith next urges the Court to apply equitable tolling to allow his petition to be considered on the merits. The Court first notes that the Seventh Circuit has not held that equitable tolling is available in the context of a § 2254 petition, referring to its availability as "dubious." Williams v. Buss, 538 F.3d 683, 685 (7th Cir. 2008), *citing* Johnson v. Chandler, 224 Fed.Appx. 515, 519 (7th Cir. 2007); Williams v. Sims, 390 F.3d 958, 963-64 (7th Cir. 2004); Modrowski v. Mote, 322 F.3d 965, 967 n.12 (7th Cir. 2003). Even if equitable tolling is available, it requires "extraordinary circumstances far beyond the litigant's control . . . ." Id., *citing* United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2010). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Id., *citing* Pace v. DiGuglielmo, 554 U.S. 408, 418 (2005).

Here, Griffith's filing was late because during the week that the filing was due, counsel was incapacitated by a fever, chills, congestion, and severe sinus headaches. (Motion for Leave to File PLA Instanter at ¶ 6) In Marcello, the Seventh Circuit declined to apply equitable tolling in a situation where a habeas petition was filed one day late as a result of the death of counsel's father, noting:

> Foreclosing litigants from bringing their claim because they missed the filing deadline by one day may seem harsh, but courts have to draw lines somewhere, statutes of limitation protect important social interests. . . . Though we sympathize with the attorney who suffered the loss of her father several

> weeks before the deadline, the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule. . . . The deadline simply was missed. That is not grounds for equitable tolling.

212 F.3d at 1010.

Similarly, in Modrowski, the filing was untimely as a result of attorney incapacitation. 322 F.3d at 967. The Court of Appeals rejected the request for equitable tolling, equating attorney incapacitation with attorney negligence. Id., at 967-68. The petitioner argued that incapacity was distinguishable from negligence, as "there is no way for a client to anticipate or protect against an attorney's sudden onset of illness, whereas a client can check the attorney's references and disciplinary records for signs of negligence." Id., at 968. The Seventh Circuit found "no principled distinction" between the two, concluding that:

> [A]ttorney incapacity is equivalent to attorney negligence for equitable tolling purposes. We will not revisit out long-standing determination that petitioners bear ultimate responsibility for their filings, even if that means preparing duplicative petitions; petitioners, "whether in prison or not, must vigilantly oversee the actions of their attorneys and, if necessary, take matters into their own hands."

Id., citing Johnson v. McCaughtry, 265 F.3d 559, 566 (7th Cir. 2001). In fact, the Seventh Circuit has "yet to identify a factual circumstance so extraordinary that it warrants equitable tolling." Chandler, 224 Fed.Appx. At 519.

Given this precedent, the Court must conclude that the temporary incapacity of Griffith's counsel due to illness does not qualify as a basis for equitable tolling in this case. The Court would also note that the initial delay due to illness in filing the PLA in the Illinois Supreme Court would not have been dispositive had counsel not then waited until what he had calculated to be the last day of the one-year limitations period to file his § 2254 petition.

The Court therefore concludes that the one-year limitations period was not tolled during the 14 days which elapsed between the expiration of the time to file a PLA and the filing of Griffith's Motion for Leave to File. When added to the 364 days that elapsed between the denial of his post-conviction PLA and the filing of his § 2254 petition, the time period exceeds the statutorily prescribed 1-year period of limitations after which a federal court cannot entertain a petition brought pursuant to § 2254 by a prisoner in state custody, and that equitable tolling, even if available, would not be appropriate. Therefore, the petition must be dismissed as untimely.

## CONCLUSION

For the reasons set forth herein, Respondent's Motion to Dismiss [#39] is GRANTED, and Griffith's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [#29] is DISMISSED as untimely. This matter is now terminated.

ENTERED this 30th day of March, 2009.

                                                s/ Michael M. Mihm
                                                Michael M. Mihm
                                                United States District Judge